# Tozier, Appellant, *v.* Brown.

*Equity—Accounting—Laches.*

A court of equity has always refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court.

A bill in equity for an accounting for logs which the plaintiffs claimed to have cut under a contract abandoned by them more than twenty years before the bill was filed, will be dismissed, where it appears that during the twenty years plaintiffs made no attempt to assert their rights, that for seventeen years prior to the filing of the bill, no logs which could be identified as having been cut by the paintiffs, came in to the defendants' possession, that some of the parties to the contract were dead, others could not be found, and checks and vouchers for payments made by defendants had been destroyed.

Argued March 18, 1902. Appeal, No. 57, Jan. T., 1902, by plaintiffs, from decree of C. P. Lycoming Co., March T., 1900, No. 2, on bill in equity, in case of Thomas Tozier, F. A. Tozier and M. A. Tozier, trading as F. A. Tozier & Company to use of Thomas Tozier, v. Henry Brown and James V. Brown, surviving partners of Brown, Early & Company, and J. K. P. Hall and A. Kaul. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an account.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*C. Bartles*, with him *George B. M. Metzger*, for appellant, cited on the question of laches : Yorks's App., 110 Pa. 82 ; Hamilton v. Hamilton, 18 Pa. 20.

*J. C. Hill*, with him *H. C. & S. T. McCormick* and *H. R. Hill*, for appellee, cited on the question of laches : Hartman v. Meighan, 171 Pa. 46 ; Ashhurst's App., 60 Pa. 290 ; Lusk's App., 108 Pa. 152 ; Penna. R. R. Co.'s App., 125 Pa. 189 ; Willard v. Wood, 164 U. S. 502 ; Sullivan v. Portland, etc., R. R. Co., 94 U. S. 806 ; Landsdale v. Smith, 106 U. S. 391 ; Badger 2 Wall. 87, 95.

OPINION BY MR. JUSTICE MESTREZAT, April 28, 1902 :

This bill was filed on December 30, 1899, and prays for an accounting. The court appointed a referee " to determine the question of the liability of the defendants to account to the plaintiffs as a preliminary question, under the provisions of the act of assembly June 24, 1895." He found against the plain.

tiffs and recommended a decree dismissing the bill which was duly entered by the court below.    The plaintiffs appeal.

On June 27, 1878, the plaintiffs and the defendants entered into a written contract, not under seal, by which the plaintiffs, the parties of the second part, agreed to stock all the pine timber owned by the defendants, the parties of the first part, on about 15,000 acres of land on Chippewa river and its tributaries in the state of Wisconsin.    Not less than 12,000,000 feet were to be stocked each year.    The parties of the second part were to receive " for the purpose of meeting the expenses of stocking said logs . . . . an advance of two dollars per thousand feet, as follows : one dollar per thousand feet on the first day of each month for all logs stocked during the previous month as per scale and at the close of the stocking season each spring one dollar per thousand feet for all logs stocked during such season."    In addition to this sum, the contract provides that Tozier & Company shall " receive out of the proceeds of said logs such share or division of said proceeds, that the amount received by them should be twenty-five cents per thousand feet more than the share or division received by the parties of the first part."    The contract also stipulated that the lands should be stocked clean, that the logs should be well marked and be driven into the main stream where the Mississippi logging company would take the drives on the first water of each spring.    Two thousand dollars were to be advanced in October, 1878, to Tozier & Company which they were subsequently to refund or account for to the parties of the first part.    It was also agreed that "should said F. A. Tozier & Company neglect or refuse to stock said timber in accordance with the contract, said parties of the first part may proceed to stock the same, charging to said F. A. Tozier & Company the costs thereof, or may at their option declare the contract null and void.    Should F. A. Tozier & Company leave any merchantable timber on said lands by reason of not stocking the same clean, they shall pay to the parties of the first part the marketable prices for the timber."

The only stocking done by Tozier & Company was in the seasons of 1877 and 1878 and the total amount of logs stocked by them was 10,655,030 feet.    Of this amount 4,755,370 feet were rafted out of the boom up to December, 1879, and the remainder, 5,988,660 feet, did not reach the boom in that year.

In Wisconsin the method of driving logs to the boom is to put them in the river or on the bank and let the current carry them to the boom. Sometimes many years elapse before they are all driven to their destination. Tozier & Company sold their camps, etc., and left Wisconsin in the spring of 1879. They did not return, but abandoned the contract, leaving the larger portion of the timber uncut. Thereafter the defendants proceeded to stock logs on the land covered by the contract. On November 28, 1883, Brown, Early & Company notified Tozier & Company that as the latter had not proceeded with the performance of their contract since the stocking season of 1878–1879, they treated their conduct as an abandonment of the agreement and declared the contract null and void. In July, 1880, Brown, Early & Company, Kaul and Hall sold to Henry Brown all their interest in the balance of the logs that had been stocked but not rafted during the two previous seasons by the Toziers. In 1882 Brown sold to Weed and Early all his interest in the lands named in the contract and also in all logs that had been stocked from them. In 1886 and 1887, J. V. Brown, Weed and Early sold all their interests in the lands to Putnam, Knapp and Stout, the last payment being due on these sales in October, 1890.

The referee found, against the contention of the plaintiffs, that while notch-girdle-notch marked logs stocked by the Toziers on the lands of the defendants were received at the boom from time to time after 1879, yet that the evidence did not show that they were received in the boom and delivered to the defendants from 1882 to 1895 or were rafted out of the boom in 1894 and 1895. Henry Brown stocked some logs with the same mark in the season of 1880–1881 which went into the same boom. There was but one notch-girdle-notch log went into the boom in 1895 or within six years of the bringing of this action, and the referee finds that it was not sufficiently identified as having been stocked by the plaintiffs, or that the defendants had any interest therein. It is not contended that the defendants received any of the logs stocked by plaintiffs after 1895. The claim sought to be enforced against the defendants in this proceeding is an alleged balance due for logs stocked by the plaintiffs in 1878–1879.

The learned referee, whose report was confirmed by the court,

has found the facts very fully and has exhaustively discussed all the questions presented for his consideration, keeping in view that the object of his appointment was to determine the right of the plaintiffs to an accounting by the defendants. On the facts found by him, he was right in holding that the plaintiffs were not entitled to the relief sought in this proceeding. We need not determine the correctness of his views on many of the questions found against the contention of the plaintiffs. Their right to an accounting for the logs stocked in 1878 and 1879 was unquestionably barred by their laches when they filed this bill in December, 1899. More than twenty years had elapsed since a right of action had accrued to them under their contract "for all logs stocked during such season." In addition to this it is found as a fact that the evidence did not show that any logs stocked by the plaintiffs were received in the boom and delivered to the defendants between the years 1882 and 1895. The learned referee was clearly right in finding that the evidence did not support the contention of the plaintiffs that the solitary notch-girdle-notch log received in the boom in 1895 was stocked by plaintiffs or that the defendants had any interest in the log. The same mark (notch-girdle-notch) was used by Henry Brown, and not by defendants, in stocking logs in the winter of 1880–1881 on the lands purchased by him at a tax sale and they went into the same boom. There were, therefore, no facts to support a finding or a presumption that this log was stocked by the plaintiffs. It is on the assumption that the only log received in the boom in 1895, bearing the notch-girdle-notch mark, was stocked by plaintiffs that they relied to meet the allegation of laches and the statute of limitations interposed as a defense to their right of action. It is apparent, however, that the facts found by the referee and supported by the evidence sustain the position of the defendants. If it be conceded, as claimed by the plaintiffs, that they were, by the conduct of the defendants, compelled to abandon the contract in the spring of 1879, then it follows that they had, at that time, a right of action against the defendants for an infringement of the contract. More than twenty years have elapsed since that date. In 1883 the defendants notified the plaintiffs that they declared the contract null and void, yet nothing was done by the plaintiffs to assert a claim or cause of action against the defendants. In

1880 the defendants sold to Henry Brown their interest in the unrafted logs stocked by plaintiffs; in 1882 Brown sold to Weed and Early his interest in the lands from which the timber was to be taken and also in the logs stocked therefrom, and in 1886 and 1887 Weed, Early and J. V. Brown sold all their interests in the lands. Thereafter Brown and Early had no interest in the lands. Notwithstanding these changes of title and the consequent infringement of the rights of the plaintiffs under the contract, they sought no remedy and invoked the aid of no legal tribunal to enforce a claim of any kind against the defendants.

Without further discussion, we are of opinion that the plaintiffs having failed to institute this suit until 1899, are, under the circumstances disclosed by the evidence, precluded from demanding an account of the logs stocked by them in 1878–1879. This claim is stale, so much so that a court of equity will not enforce it. Vigilantibus, non dormientibus subveniunt leges. Some of the parties to the contract are dead, others cannot be found, and the checks and vouchers for payments made by defendants have been destroyed. The plaintiffs, if they ever had a meritorious claim, have certainly slept upon their rights until it would be a great hardship and would doubtless work injustice if a court of equity should, at this late date, compel an accounting by the defendants. No excuse has been offered and no reason suggested for the delay in bringing this action. As said by the referee there was no evidence before him which would relieve the plaintiffs from the charge of laches. "A court of equity," says Lord CAMDEN in Smith v. Clay, 3 Bro. C. C. 640, "has always refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence; where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."

The assignments of error are overruled and the decree of the court below is affirmed.