# Kelly's Estate.

*Executors and administrators—Settlement of account—Distribution—Laches.*

The only effect of the settlement of an administration account in the orphans' court is to show the balance of assets in the administrator's hands after the payment of debts and charges, and can have no bearing upon the amount due to legatees, or to repel the presumption of the payment of a legacy which arises from lapse of time. The distribution of the estate of a decedent is not required to await the settlement of the final administration account.

As long as the relation of trustee and cestui que trust is acknowledged to exist between the parties, and the trust is continued, lapse of time can substitute no bar to an account or other proper relief for the cestui que trust. But when this relation is no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance; in all such cases a court of equity will refuse relief upon the ground of lapse of time and its inability to do complete justice.

Where there has been a distinct repudiation by the trustee of even a direct trust, and knowledge of the repudiation has been brought home to the cestui que trust, the case comes within the ordinary rules of limitation and laches. Laches will in equity bar a suitor of his remedy as effectually as the statute of limitations, and for the same reason his own inaction raising the identical presumption which the law raises, one from a mere lapse of time.

At the time of the death of a testator, a legatee mentioned in the testator's will had not been heard of for many years. The executor filed an account which was confirmed absolutely by the court. Three years thereafter, the legatee being still absent, the orphans' court made a decree distributing the amount of the legacy, and the administratrix c. t. a. made actual distribution thereof. About three years after the distribution, the legatee, then a man of twenty-five or twenty-six years of age, returned, learned of the legacy and the distribution thereof, but he did nothing, and shortly afterwards disappeared, and remained away for a period of twelve years. He then returned, and filed a petition for citation against the administratrix. *Held*, that the legatee by reason of his laches was barred from any recovery on account of the legacy.

Argued May 12, 1908.    Appeal, No. 220, April T., 1907, by James E. Kelly, from decree of O. C. Butler Co., dismissing

petition for citation in Estate of Abner Kelly, deceased. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Petition for citation.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition.

*Error assigned* was decree dismissing the petition.

*W. D. Brandon,* for appellant.—Being a judicial decree of the same order and nature as a judgment at law, a decree of the orphans' court is entitled to the same respect, is of equal vitality and should not be defeated or swept aside by defenses inapplicable to a judgment at common law: Burd's Exrs. v. McGregor, 2 Grant, 353; DeHaven v. Bartholomew, 57 Pa. 126; Com. v. Moltz, 10 Pa. 527; Com. v. Snyder, 62 Pa. 153.

*S. F. Bowser,* with him *A. L. Bowser,* for appellee.—As between the executor and the creditors of an estate no trust exists of that peculiar kind that is within the exclusive control of a court of equity: York's Appeal, 110 Pa. 69.

If a party has a remedy at law, and instead of bringing his action, lies by, and then resorts to equity, he is bound wherever he would be at law.

Inaction for a long period of time, coupled with knowledge of the matter complained of, bars a recovery in the orphans' court: Lee's Estate, 9 Pa. C. C. Rep. 655; In re Estate of Peter Rist, 192 Pa. 24.

On the question of the lapse of time equity follows the analogy of the statute of limitations: Todd's Appeal, 24 Pa. 429; Jones v. Turberville, 2 Vesey, Jr., 11; York's Appeal, 110 Pa. 69; Adams's Est., 183 Pa. 134; Bank of Gettysburg v. Thompson, 3 Grant, 114; Lyon v. Marclay, 1 Watts, 271; Johnston v. McCain, 188 Pa. 513; Bruner v. Finley, 187 Pa. 389.

Opinion by Porter, J., October 12, 1908:

Abner Kelly died on September 23, 1887, leaving a will which was duly probated on the 30th day of the same month, and con-

taining this bequest: "To Mary Jane Wyke's illegitimate son she laid to me by oath, my gray mare, saddle and bridle, together with five hundred dollars in lawful money of the United States." Letters of administration c. t. a. were duly issued to his widow, Eddie C. Kelly, the appellee. The administratrix, on October 31, 1887, filed a final account, which on December 17, 1887, was confirmed absolutely by the orphans' court. The account showed a balance due the estate, which balance was in the account thus stated: "Balance due estate for Wyke $614.67." The court did not at that time make any decree of distribution. Mary Jane Wyke had, after the birth of the child mentioned in the will, married a man named Wilson, and her son was thereafter known, sometimes as Wyke, sometimes as Wilson and sometimes as Kelly. At an early age the child left his home, and at the time of the death of Abner Kelly had not been heard of for several years. On November 22, 1890, the court not having until that time made a decree of distribution of the balance in the hands of the administratrix and the said child of Mary Jane Wyke being still absent and unheard of, Joshua A. Kelly presented his petition to the orphans' court alleging that the said illegitimate son of Mary Jane Wyke had been absent and unheard of for at least eight years, that search and inquiry had failed to find him, that he was believed to be dead, and praying that the court decree the distribution of the balance in the hands of the administratrix to the next of kin of the decedent. The court upon this petition awarded a citation to the administratrix to show cause why the prayer of the petitioner should not be granted, and fixed the time for a hearing. The administratrix filed an answer to this petition, admitting the facts therein alleged and averring her readiness to comply with any order the court might lawfully make in the premises. The court on January 10, 1891, after a hearing, entered a decree distributing the entire balance in the hands of the administratrix, who thereupon paid out the money in accordance with said decree.

The matter slumbered in that condition for over fifteen years when, on May 7, 1906, a petition was presented to the court below by James E. Kelly, averring that he was the illegit-

imate son of Mary Jane Wyke, mentioned in the will of Abner Kelly; that the legacy had never been paid to him and praying for a citation on the administratrix, the appellee, to show cause why she should not pay over to him the sum of $614.67, shown by her account to be in her hands, with interest thereon. A citation was awarded, to which the administratrix filed an answer, denying that the petitioner, now the appellant, was the son of Mary Jane Wyke referred to in the will, and alleging that she had already paid out the balance shown by the account to be in her hands, under the decree of the court as hereinbefore stated. The court after a hearing found the following facts, in addition to those hereinbefore stated. James E. Kelly, the appellant, was the son of Mary Jane Wyke, referred to in the will, he had at an early age disappeared from his home and at the time of the death of Abner Kelly had not been heard of for several years. He did return to the neighborhood in the year 1893 or 1894, twelve or thirteen years before the filing of this petition, and he was then a man twenty-five or twenty-six years of age, he at that time learned of the legacy which had been bequeathed to him by the will of Abner Kelly, and also of the filing of the account by the administratrix and of the distribution of the balance shown by that account to other parties, pursuant to the decree of the court above mentioned, but made no demand for payment of said legacy to himself. Having learned these facts he again disappeared and was not heard of thereafter until at or about the time when he presented his petition asking for a citation on the administratrix c. t. a. to pay over to him the said legacy. The learned judge of the court below held that upon this state of facts the appellant was barred by his own laches, and dismissed the petition. The petitioner appeals.

The contention of the appellant that the confirmation of the account, as filed by the administratrix, became a decree in his favor for the amount of the balance shown by the account, is not well founded. Even if the administratrix had had the power to determine the person to whom the balance in her hands was to be paid, she did not by this account do so. The account did not state the balance to be due to Wyke, although it did state a "Balance due estate for Wyke." This amounted to nothing

more than a declaration in the account that the accountant held that amount of money, the property of the estate. This could not be made a substitute for a decree of distribution, which could be made only by the court. The only effect of the settlement of an administration account in the orphans' court is, to show the balance of assets in the administrator's hands after the payment of debts and charges, and can have no bearing upon the amount due to legatees, or to repel the presumption of the payment of a legacy which arises from lapse of time: Foulk v. Brown, 2 Watts, 209. The distribution of the estate of a decedent is not required to await the settlement of the final administration account. "The settlement of an administration account showing a balance due the estate is therefore no more now than formerly an admission that the amount is actually in the hands of the accountant, and has not been paid over. Administration is still one thing—distribution another and distinct thing, the practice of blending an administration with a distribution account, has been condemned by the courts in strong terms as erroneous and fraught with mischief and disorder:" Commonwealth v. Snyder, 62 Pa. 153. The account of the administratrix and the confirmation thereof by the orphans' court did not constitute a decree that the administratrix should pay over this money to the appellant; it was not even a judicial determination that she had not already paid it to him.

"As long as the relation of trustee and cestui que trust is acknowledged to exist between the parties, and the trust is continued, lapse of time can substitute no bar to an account or other proper relief for the cestui que trust. But when this relation is no longer admitted to exist, or time and long acquiescense have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance; in all such cases, a court of equity will refuse relief upon the ground of lapse of time and its inability to do complete justice. This doctrine will apply even to cases of express trust:" Story's Equity Jurisprudence, sec. 1520. Where there has been a distinct repudiation by the trustee of even a direct trust, and knowledge of the repudiation has been brought home to the cestui que trust, the

case comes within the ordinary rules of limitation and laches. Laches will in equity bar a suitor of his remedy as effectually as the statute of limitations, and for the same reason, his own in-action raising the identical presumption which the law raises, one from a mere lapse of time: App. v. Dreisbach, 2 Rawle, 287; Adams's Estate, 183 Pa. 134; Bruner v. Finley, 187 Pa. 389; Rist's Estate, 192 Pa. 24. When the appellant, in 1894, learned not only that this legacy had been bequeathed to him, but, also, that the administratrix had filed an account showing a balance sufficient to pay the legacy and that after the account had been confirmed and remained in that condition for years the orphans' court had decreed that it should be paid to other parties by the administratrix, who had actually distributed it pursuant to said decree; the said decree having been entered because he, the present claimant, was believed to be dead; he was visited with notice that the administratrix no longer ad-mitted that she held the money for him, and that it was actually claimed by others. He was then in a position to act, and it was his duty to act with reasonable promptness. Instead of doing so, he without making any claim left the neighborhood and was unheard of for at least twelve years. After that long silence, he now returns and demands his money, long after any refunding bond which the administratrix might have taken could, under the provisions of the Act of June 30, 1885, P. L. 203, be made available for the recovery of the money which she had already paid out. The court below correctly held that the right of the appellant was barred by his laches.

The decree is affirmed and the appeal dismissed at cost of the appellant.