## McGrann *v.* Allen et al., Appellants.

*Equity — Accounting — Trusts and trustees—Laches—Death of trustee—Act June 8, 1917, P. L. 447.*

1. Delay which injures no one will not furnish reason for refusing an accounting by a trustee, but when by reason of a failure to exercise due diligence the rights of the parties have been adversely affected by altered circumstances, the contrary is true.

2. A decree for an accounting should be denied where it clearly appears that the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence or other cause.

3. Laches does not depend on the statute of limitations, but whether due diligence has been shown.

4. Where a person claiming an accounting takes no legal steps to establish his rights within a proper time, it is immaterial that he has asserted them.

5. Even where there is a right to demand an accounting from the estate of a deceased trustee, reasonably diligent action must be taken.

6. The Fiduciaries Act of June 8, 1917, P. L. 447, indicates a legislative purpose that estates shall be promptly closed, so that the rights of devisees and heirs may be determined.

7. An accounting will not be decreed against the executors of a deceased assignee for creditors, at the instance of the assignor, where no fraud is alleged, where no creditors intervene, and it appears that the assignor made no demand for an accounting from

the assignee for twelve years before the latter died, and did not proceed to file a bill for an account until sixteen months after his death.

Mr. Justice SIMPSON filed a dissenting opinion, in which Mr. Justice WALLING concurred.

Argued December 5, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 248, Jan. T., 1927, by defendants, from decree of C. P. Lancaster Co., Equity Docket No. 7, page 189, directing an accounting, in case of Richard P. McGrann v. Elizabeth Nauman Allen and the Lancaster Trust Co., executors of John A. Nauman, deceased.  Reversed.

Bill for accounting.   Before HASSLER, J.
The opinion of the Supreme Court states the facts.
Decree entered for accounting.   Defendants appealed.

*Error assigned,* inter alia, was decree, quoting record.

*J. B. Myers,* of *Zimmerman, Myers & Kready* and *Spencer G. Nauman,* for appellants.—The laches of plaintiff bars his right to demand an account: Kinter v. Trust Co., 274 Pa. 436; Patton v. Trust Co., 276 Pa. 95; Hammond v. Hopkins, 143 U. S. 224; Hardt v. Heidweyer, 152 U. S. 547.

The existence of a fiduciary relationship does not excuse plaintiff from laches when death has intervened and the rights of third parties are affected: Hammond v. Hopkins, 143 U. S. 224; McKnight v. Taylor, 42 U. S. 161; Stevens v. R. R., 278 Pa. 284; Selmer v. Smith, 285 Pa. 67.

*Chas. E. Workman,* for appellee.—The accounting was properly decreed: Gruber v. Hays, 280 Pa. 489; Davidson v. Davidson, 262 Pa. 520; Selmer v. Smith, 285 Pa.

67; Bockius's Est., 22 W. N. C. 312; McCartney's Est.,
79 Pa. Superior Ct. 326; Beck v. Uhrich, 16 Pa. 499;
Bruner v. Finley, 187 Pa. 389; Harris v. Silvis, 86 Pa.
Superior Ct. 222.

OPINION BY MR. JUSTICE SADLER, January 3, 1928:

McGrann, the plaintiff, became involved financially in
1912. His land was subject to a mortgage of $90,000
and judgments in excess of $50,000. Unsecured cred-
itors for a large amount pressed for payment. For the
purpose of saving as much as possible, he agreed to
transfer his real estate, as well as such personal prop-
erty as he possessed, to John Nauman, an attorney, also
interested for the People's Trust Company, the holder
of the record liens. The land to which he had title
was conveyed to Nauman individually, who took pos-
session of this, as well as of the personal property found
thereon. In addition, McGrann confessed judgment to
Nauman for $25,000, and it is claimed certain other
funds were turned over to him by the debtor's wife.
The real estate disposed of in 1912 did not net a sum
sufficient by far to satisfy the liens, and the remainder
of the property, subject to the judgments, with the ex-
ception of a tract which was deeded for the considera-
tion of $1 in 1921, was sold at sheriff's sale in 1914, after
which McGrann employed other counsel to represent
him.

Proceeds of the sale of the personal property, as well
as funds secured from loans for temporary use made
by Nauman discounting individual obligations, were
placed in a special deposit in the People's Trust Com-
pany, and upon it checks were drawn for necessary
charges and expenses, and in payment of 50% of the
claims of unsecured creditors. This account was bal-
anced and closed in 1915. As far as appears no further
claim has been made by any of those to whom debts were
owing, and none is a party to the present proceeding.
McGrann was a resident of Lancaster, where all the

parties lived and the transactions took place, and, except for some time spent by him in California, was located in that city during the years following. It is not averred that he made any complaint of the conduct of the trustee, or of his failure to properly expend the funds which came into his hands from 1912 until 1924, though there was ample opportunity to do so, if desired. In the last named year he requested two attorneys to interview Nauman in regard to his affairs, but neither of them asked for any accounting, nor made claim for any sum alleged to be due.

No proceedings were instituted by plaintiff to secure an accounting during the lifetime of Nauman, who died on July 14, 1924. Letters testamentary were granted upon his estate to the executors named, and to one of them McGrann thereafter made a request for the filing of a statement. On December 5, 1925, nearly seventeen months after Nauman's death, plaintiff filed a bill praying that an account be stated by the executors of his trust estate. No averment is made of fraud, nor does any unpaid creditor join in the proceeding. Nor is there any explanation given as to why the delay for 14 years in requesting a settlement occurred. A motion to dismiss the bill because of plaintiff's laches was refused. An answer was filed, setting up the defense of undue delay, and averring in effect that, by reason of the change of circumstances, caused by death, necessary testimony was no longer available, and the presentation of an accurate statement a practical impossibility. After hearing, the court directed an accounting, and defendants have appealed.

We are confronted with the single question as to whether plaintiff has by his conduct lost his right to equitable relief. In passing upon the effect of delay in the assertion of claims as here presented, the determination must rest on a consideration of the facts of the particular case: Selmer v. Smith, 285 Pa. 67; Stevens v. D., L. & W. R. R. Co., 278 Pa. 284. The accounting

asked is of an express trust to convert assets and satisfy creditors and the statute of limitations will not bar such an action, nor ordinarily can laches be successfully interposed (Gruber v. Hays, 280 Pa. 489; Kelly's Est., 37 Pa. Superior Ct. 320; Horine v. Mengel, 30 Pa. Superior Ct. 67), unless there has been a prior repudiation of the obligation: Rist's Est., 192 Pa. 24; Bruner v. Finley, 187 Pa. 389. In the present case, we find an accounting asked after an unexplained delay as against the trustee for twelve years, and a lack of diligence for sixteen months thereafter in proceeding against his estate after his decease, when conditions have changed.

Delay which injures no one will not furnish reason for refusing relief (Selmer v. Smith, supra; Bradly v. Jennings, 201 Pa. 473), but when by reason of a failure to exercise due diligence the rights of the parties have been adversely affected by reason of altered circumstances, the contrary is true. The rule applicable in such cases was thus stated by Lord ELDON, in Foster v. Hodgson, 19 Ves. Jr. 180, 185, cited with approval in Stevens v. D., L. & W. R. R. Co., supra: "If there has been that delay or forbearance that makes it not illegal, but inequitable, to demand an account, this court will deny it, and send the plaintiff away without relief. Each case must be controlled by its own peculiar circumstances, but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party, loss of evidence or other cause." As stated by another court (Hammond v. Hopkins, 143 U. S. 224): "The rule is particularly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original trans-

actions having become so obscured by time as to render the ascertainment of the exact facts impossible."

Equity will ordinarily lend its aid to the enforcement of an express trust, and an accounting is not barred by lapse of time. "But even in such cases a court of equity may refuse to enforce a trust on the ground of laches and its inability to do complete justice, where, with actual or constructive knowledge of a breach of trust or assertion of adverse rights, the cestui que trust has inexcusably and unreasonably delayed asserting his rights": 39 Cyc. 601. "The courts will ordinarily refuse to enforce a trust where under the circumstances the lapse of time is such as to give rise to a presumption of discharge or extinguishment of the trust, or to obscure the acts of the parties, or the nature and character of the trust, as where there have been deaths of witnesses, or loss of papers, or there are any matters in the nature of an estoppel, which make it clearly inequitable or unjust to enforce the trust": 39 Cyc. 602.

The equitable doctrine has been applied where an accounting was asked of one holding under an express trust (McKnight v. Taylor, 42 U. S. 161; Maggini v. Jones, 223 Pa. 301), a testamentary trust, though the party was ignorant of his rights until shortly before suit brought (Taylor v. Coggins, 244 Pa. 228), when the effort was to enforce a resulting trust (Rhodes v. Good, 271 Pa. 117; Sullivan v. Sullivan, 74 Pa. Superior Ct. 396), or where the alleged trustee holds the property under an adverse claim: Stevens v. D., L. & W. R. R. Co., supra. A change of circumstances barring relief has been held to occur when the party, or an essential witness, has died (Dalzell v. Lewis, 252 Pa. 283; Adams's Est., 183 Pa. 134), or evidence has been lost, or is more difficult to procure: Tozier v. Brown, 202 Pa. 359; Stevens v. D., L. & W. R. R. Co., supra. And the same rule, denying equitable relief, has been enforced where undue delay in asserting rights based on fraudulent conduct appeared: Patton v. Com. Trust

Co., 276 Pa. 95; Kinter v. Com. Trust Co., 274 Pa. 436.

As was said in Kinter v. Commonwealth Trust Co., supra, laches does not depend on the statute of limitations, but whether due diligence has been shown; and nothing can call a court of equity into activity unless due diligence in prosecuting one's rights appears; and in Patton v. Commonwealth Trust Co., supra, the rule refusing equitable relief is particularly interesting in showing that delay has made difficult the doing of justice because of death, by reason of which the facts have become obscure. In the present case an accounting could have been demanded of Nauman for twelve years before his death. Other attorneys represented McGrann in 1914, after the sheriff's sale, and still others in 1924, who made no request for an accounting for any alleged balance due. It is immaterial that he asserted rights, if he took no legal steps to establish them: 10 R. C. L. 402; Mackall v. Casilear, 137 U. S. 556. There is no averment that he improperly retained during this period any sums of money, or that he was guilty of any fraud, a factor to be considered: Dalzell v. Lewis, supra; Gress's App., 14 Pa. 463.

Further, the present bill is not filed against a living trustee, but the executors of his estate are made defendants. His mouth has been closed by death, and the situation as to available proof profoundly altered. Even when there is a right to demand an accounting from the estate of one deceased, reasonably diligent action must be taken. If we examine the Fiduciaries Act of 1917 (June 7th, P. L. 447), there is found an evident legislative purpose that estates shall be promptly closed, so that the rights of devisees and heirs may be determined. This is shown by the fact that the executor or administrator is required to advertise that all claims must be presented within six months, that an account shall be filed within that time, or may be compelled by the creditors, with the barring of any demand for a share in distribution if not presented at the audit which follows.

Likewise, we find that no debt whatsoever shall be enforced against real estate, unless the subject of suit within one year: Kirk v. Van Horn, 265 Pa. 549. As stated by the commissioners who framed the act, the shortening of the time for the adjustment of all demands, and a final accounting, was the result attempted to be attained.

If there be an outstanding assertable right against the estate, it must be proceeded against with due diligence, and the legislature has indicated the period deemed reasonable. The application of the doctrine of laches does not depend on the statute of limitations, but the analogy to it in determining the time within which an act should be performed is considered: Edwards v. W. M. Ry. Co., 268 Pa. 228; Sullivan v. Sullivan, supra. It has been invoked where a less period than that fixed for barring an action has elapsed: P. R. R. Co.'s App., 125 Pa. 189.

In the present case, plaintiff made no demand for an accounting from Nauman for the twelve years before he died, nor did he proceed with any reasonable dispatch against the executors thereafter, but awaited sixteen months before filing his bill. No excuse has been offered for the failure to exercise due diligence, and the result has been to so alter the circumstances as to make difficult, if not impossible, the doing of exact justice. A court of equity will not lend its aid to one so in default to the prejudice of the estate of another against whom no allegation of wrongdoing is made. Under the circumstances of the case the harm, if there be any, must fall on the one whose delay makes impossible the award of an account without doing injustice to others.

The decree is reversed, and the bill dismissed, at the cost of appellees.

DISSENTING OPINION BY MR. JUSTICE SIMPSON, January 3, 1928:

It is expressly admitted that decedent never denied the existence of the trust of which an accounting is

sought; that he never had accounted; that he never had refused to account; and that he never had been released from liability so to do.   Under such circumstances, the majority opinion admits that the time which has elapsed since the trust began, is too short to defeat the right to an account, unless harm has resulted because of the delay.   This harm is inferred to have arisen simply because of the death of the trustee and the lapse of sixteen months thereafter, before bill filed.   Death alone would not be sufficient; the same harm which would arise therefrom, would have existed if decedent had died the day after he converted the assets committed to his care. His mouth would have been closed then exactly as it is closed now; and plaintiff's mouth would have been closed then as now.   There is no averment that the difficulty in stating and proving the account is greater now than it was then.   Delay of course raises presumptions; but they arise as against plaintiff, and will be applied if and when he objects to the credits on the account which the executors can prepare, or if he attempts to surcharge them.   The fact that plaintiff may have lost the lien which the statutes gave him upon the estate which decedent left, is unimportant; accounting will not revive that lien, and those statutes provide no other penalty, for a failure to act promptly, than the loss of the lien. I would affirm the decree of the court below.

Mr. Justice WALLING concurred in this dissenting opinion.