## Mulligan Estate

*George E. Beechwood* and *Louis H. Levitt*, for petitioner.

*Albert J. Taylor* and *Frank J. Eustace, Jr.*, contra.

KLEIN, P. J., November 4, 1966.—These proceedings are but another skirmish in the ugly and senseless battle Catherine Mulligan Hagar is waging against her aged father, Harold B. Mulligan.

Mary D. Mulligan, petitioner's mother and wife of respondent, died July 19, 1955. Her will was admitted to probate April 24, 1956, when letters testamentary were issued to George S. Fliegel and Harry J. Alker, Jr., executors named in the will.

Mr. Alker, who was a member of the bar, became involved in serious difficulties, as a result of which the official examiners of the orphans' court were directed to examine the assets of all of the estates, including the one before us, in which Mr. Alker was serving either as fiduciary or as counsel.

The report filed by the examiners disclosed that complete distribution of the assets had been made to the parties entitled thereto and recommended that Mr. Alker be removed as executor. This was done by order of the court entered May 26, 1959.

In June of 1965, almost 10 years after her mother's death, Catherine Mulligan Hagar filed a petition for citation directed to George S. Fliegel, the remaining executor, to show cause why he should not file an account of his administration of her mother's estate. A responsive answer was filed by executor, and on August 25, 1965, Shoyer, J., appointed "Alexander Schamban, Esq. as Master, to hear testimony, receive evidence and report to the Court".

Mr. Schamban filed his report on February 24, 1966, recommending that the court dismiss the petition for an accounting. He made the following conclusions of law:

"1. The established facts show a family settlement

by which the sole party in interest, Harold B. Mulligan, received distribution of all assets of the Estate and waived a formal accounting by the Executors and audit of the account by the Court.

"2. Petitioner, Catherine Mulligan Hagar, has no legal basis to request the filing of an account by the Executor.

"3. Petitioner is guilty of laches and therefore not entitled to relief requested in her petition".

Exceptions filed to the master's report were dismissed by him in a supplemental report, and the master's findings of fact and conclusions of law were adopted by Judge Shoyer by decree entered May 5, 1966.

Exceptions to this order are now before us for consideration.

It is difficult to understand petitioner's motive in pursuing this action with such acrimonious vigor, since her interest in her mother's estate was minimal. She had no interest in the remainder because her father survived her mother. Her interest was limited to a one third share of testatrix's linens (item 7 of the will) and a one sixth share of "all my other household goods, furnishings, glassware, glass tumblers, etc." (item 8 of the will).

We agree with the learned master that if the linens and household goods were not owned by testatrix, she could not pass title to them by her will. In order for petitioner to dispute her father's title to the items mentioned in the will, she was under a duty to establish ownership in decedent. This she failed to do.

In King Estate, 387 Pa. 119, 127 (1956), Mr. Justice (now Chief Justice) Bell said:

"Where furniture is contained, at the death of a husband, in a house or apartment which was then or formerly owned or rented by him, the ancient presumption still prevails—notwithstanding the doubt ex-

pressed in Fine v. Fine, 366 Pa. 227, 77 A. 2d 436—
that he is the owner of such furniture: Schwartz Estate, 166 Pa. Superior Ct. 459, 71 A. 2d 831; Chadwick Estate, 154 Pa. Superior Ct. 157, 35 A. 2d 582; Matheny Estate, 164 Pa. Superior Ct. 18, 63 A. 2d 477. A wife can overcome this presumption by evidence that she paid for or inherited the furniture, or acquired it by gift, or that they jointly paid for it, or by any other evidence sufficient to prove ownership. Mrs. King's evidence was insufficient to overcome this presumption".

See also: Dura Seal Products Co., Inc. v. Carver, 186 Pa. Superior Ct. 425 (1958).

This same presumption of ownership in the husband applies with equal force to linens, household goods, furnishings, glassware and all other household effects used by the husband and wife in their common domicile.

In the present case, petitioner has wholly failed to meet the burden which the law has placed upon her. On the contrary, the undisputed testimony submitted before the master clearly indicates that testatrix was a housewife who was fully supported by her husband and that all of the items involved in the controversy were purchased by him with his own funds, and not by her.

We also agree with the master that petitioner is guilty of laches. She waited almost 10 years before she filed this petition for an accounting. She tries to explain this exceedingly long delay by suggesting that she was deceived and lulled into inaction by George S. Fliegel, the remaining executor, who is employed by her father in his undertaking business. Her position is wholly untenable and her testimony incredible. She is not an inexperienced child. On the contrary, she is an experienced professional woman, 48 years of age.

Harold B. Mulligan has conducted a successful undertaking business for a great many years. The principal assets of testatrix' small estate were a few shares

of stock in companies related to her husband's undertaking business. Petitioner is a licensed mortician herself, and had been associated with her father in his business. She has presented no excuse for her unwarranted delay in this matter. She knew that her mother was dead and that she had left a will. The most elementary investigation of public records by her would have disclosed the fact that the will had been probated and also its provisions; that letters testamentary had been issued to George S. Fliegel and Harry J. Alker, Jr., and that the linens and other items in which she claims an interest had not been included in the inventory which they filed.

Harold B. Mulligan, personally, paid the transfer inheritance taxes which were assessed, the administration expenses and decedent's other debts. The grant of letters testamentary was duly advertised in accordance with the requirements of law. Under these circumstances, executors were fully justified in making distribution to the surviving husband, who was, for all practical purposes, the sole party in interest.

In Wanamaker Estate, 39 D. & C. 2d 350 (1966), we said, at page 355:

"The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under the circumstances of the particular case, petitioners are chargeable with want of due diligence in failing to institute their proceeding: Bangert v. Provident Trust Company, 314 Pa. 442 (1934); Lehner v. Montgomery, 180 Pa. Superior Ct. 493 (1956); Barndollar v. Groszkiewicz, 178 Pa. Superior Ct. 110 (1955)".

This question was fully discussed by Mr. Justice Sadler in McGrann v. Allen, 291 Pa. 574, 578 (1928), in which he said:

"Delay which injures no one will not furnish reason

for refusing relief (Selmer v. Smith, supra; Bradly v. Jennings, 201 Pa. 473), but when by reason of a failure to exercise due diligence the rights of the parties have been adversely affected by reason of altered circumstances, the contrary is true. The rule applicable in such cases was thus stated by Lord Eldon, in Foster v. Hodgson, 19 Ves. Jr. 180, 185, cited with approval in Stevens v. D. L. & W. R. R. Co., supra: 'If there has been that delay or forbearance that makes it not illegal, but inequitable, to demand an account, this court will deny it, and send the plaintiff away without relief. Each case must be controlled by its own peculiar circumstances, but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of the party, loss of evidence or other cause.' As stated by another court (Hammond v. Hopkins, 143 U. S. 224): 'The rule is particularly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible".

There can be no doubt that the position of George S. Fliegel, the remaining executor, has been prejudiced by petitioner's long delay. He is a layman, untutored in law. His coexecutor, upon whom he relied, was an experienced lawyer who was removed from his office by the court in 1959, after the official orphans' court examiners reported that complete distribution of the assets had been made to the parties entitled thereto. Certainly, Mr. Fliegel was justified in relying upon this report. He would be at a serious disadvantage now,

after the passage of many years, to dispute the husband's claim of ownership of these insignificant household goods, especially since they are items which are used constantly in the operation of a household and which, in many instances, might have been worn out and replaced in the period of a decade. Since respondent would not have been placed in this position if petitioner had acted with due diligence, relief must be denied her. She has slept too long on her rights.

Accordingly, the exceptions are dismissed, and the petition of Catherine Mulligan Hagar, seeking to compel George S. Fliegel, the remaining executor, to file an account is dismissed.