## Halsey *versus* Tate.

1. He who proceeds in the Orphans' Court against an estate, or the person representing it, must have an interest immediate or remote.

2. Nicholson, in 1795, transferred to Tate shares in a land company, and after sixty years, there having been no assertion of a trust by Nicholson or his representatives, or recognition by Tate or his representatives, a claim that the transfer of the stock was not absolute, but in trust, is stale and cannot be enforced.

3. The transfer in its nature imported an adverse not a fiduciary ownership, and the presumption of title flowing from great lapse of time, will not be reversed without strong facts.

APPEAL from the Orphans' Court of *Philadelphia*, by William S. Halsey, administrator *de bonis non*, &c., of John Nicholson, deceased, in the matter of his petition for a citation to Caroline M. Tate, administratrix, &c., of James Tate, deceased, to file an account, &c.

The petition set forth that on the 25th of February 1795, The North American Land Company was established in Philadelphia, by Robert Morris, James Greenleaf and Nicholson, the decedent; that on the 27th of May, same year, the decedent wrote to Cazenove & Co. that Tate, "who went on a special invitation to England, took also for sale a body of valuable land for me. The avails, when he sells, are to be deposited with you"; that on the 3d day of June, same year, Nicholson transferred to Tate on the books of the company seventy-five shares of stock; that said shares were put in the name of Tate merely for convenience, and in trust only, so that he as agent for Nicholson, might sell the same in Europe, and account to Nicholson for the proceeds; that on the 5th of June, same year, Nicholson wrote to Tate, then supposed to be in London, "I send you ten certificates of seventy-five shares in The North American Land Company, which I have transferred to you, and which I request you to sell on my account, for what you can get for them—not less than $100 per share. * * The moneys arising from this, as well as the other property, please deposit with J. H. Cazenove, Nephew & Co., merchants in London, deducting your commission at the same rate as the other."

Same day Nicholson wrote to Benjamin Parsons, near London:

" I have, as you know, property with * * Dr. Tate. You will oblige me by inquiring to see what success they have, and writing me. I send some shares to Dr. Tate under your care; be pleased to find him out, for I do not know his address, and see that he gets them;" that on the 14th of July, same year, Cazenove & Co. wrote to Nicholson that they had not heard of Tate; that on the 11th of September same year, Parsons wrote to Nicholson: "The letter, &c., for Dr. Tate are still at Mr. Bayard's;" that on the 19th of December 1798, Barrell & Servanté, of London, wrote to Nicholson: "We have not been able to recover any of the land company shares which you confided to Mr. Parsons, Dr. Tate or Mr. Joseph Barnes, according to your request, dated 6th March last. We delivered your letter to Mr. Barnes, and had some conversation with him on the subject, who promised to endeavour to find where Parsons and Dr. Tate could be heard of, and to furnish us with an abstract of what shares he had disposed of, and to put the remainder into our hands; but although this was many months ago, we have never heard from him or seen him since, and we cannot, to this day, hear anything either of Parsons or Dr. Tate;" that although the seventy-five shares of stock were transferred into the name of Tate, yet it is extremely probable the certificates never reached his hands; that on the 2d of December 1800, Nicholson died in Philadelphia intestate, leaving a number of creditors, a widow and several minor children; that your petitioner is informed and believes that, prior to the year 1804, all his heirs and his widow left the state of Pennsylvania, and went into exile in Louisiana; that the Commonwealth of Pennsylvania passed legislative acts, ordering Nicholson's papers to be seized; they have been in the state's exclusive keeping; that no administration was asked for to his estate until the year 1826; that on the 28th of June 1856, the first account of the trustees of the land company was filed, and on the 29th of July 1856 was referred to an auditor, who, on the 19th of January 1860, reported the said seventy-five shares of stock still standing in the name of Tate, and awarded a dividend thereon to his legal representatives; that on the 25th of October 1860, letters of administration *de bonis non* on the estate of Nicholson were issued to the petitioner; that on the 10th of December 1862 the register issued administration *de bonis non, cum testamento annexo,* on the estate of Tate to Caroline M. Tate, of Trenton, New Jersey; that on the 12th of December 1862, said dividend ($519) was paid by the surviving trustees of said land company to said administratrix, who has neglected to file any account of her administration, &c., and praying for a citation to the administratrix to account and for dismission. A citation was awarded October 1864. The administratrix answered "that the seventy-five shares were regularly transferred to 'Dr. James Tate,' on the 3d of June 1795,

[Halsey v. Tate.]

by which transfer the full legal title of said shares was duly vested in the said James Tate; and that as no claim has ever been made until now to said shares; and as no retransfer to Nicholson, or to any one in his behalf, has ever been made, and as the pretended title of Nicholson's administrator is entirely predicated of *ex parte* statements, which are contradicted by the record of the association, are unsupported by other proofs, and are conclusively barred by the Statute of Limitations, and the lapse of nearly three-quarters of a century; by his own showing the petitioner is not a party in interest within the meaning of the statute allowing citations to administrators; and that no claim having been made known to her, and nearly two years having elapsed since the said money was paid to her, she, in good faith, paid over the same to the heirs of Dr. James Tate, and that she has fully administered the estate."

The Orphans' Court dismissed the petition, which was the error assigned.

*Lawrence* and *G. D. Budd*, for appellants, cited Act of March 15th 1832, § 15; Act of 29th March 1832, §. 1–27; Smith *v.* Black, 9 Barr 308; Sarkie's Appeal, 2 Id. 157.

No paper-book for appellee was furnished.

The opinion of the court was delivered, May 15th 1866, by

AGNEW, J.—In the Orphans' Court, he who proceeds against an estate, or the person who represents it, must have an interest immediate or remote. The interest asserted in the petition in this case is an alleged trust on part of Dr. James Tate, the decedent, for the late John Nicholson, in seventy-five shares of stock in the North American Land Company. The petitioner not contenting himself with a general allegation of Nicholson's interest, sets forth both the nature and the evidence of the interest, with a view perhaps to obtain an early decision of his right to intervene. The answer of the administratrix of Tate denies the interest of the claimant, and prays a dismission of the bill on this ground. The question is therefore raised whether upon the facts set forth, any interest appears to warrant the proceeding on part of Nicholson's administrator to compel the administrator of Tate to settle the account demanded of this alleged trust, and also to have her dismissed from her office as a non-resident of the state. It is not necessary to determine the competency of the evidence set forth to support the trust; though it might not be difficult perhaps to show that after three score years and ten, the allotted limit of human life, the facts recited would stand as primary evidence, and if competent would lead to the conclusion that a trust once existed. But passing this without a decision, we are of opinion

[Halsey *v.* Tate.]

no continuing and subsisting trust is exhibited which equity would now enforce.

It is not a case of express trust contained in the instrument or acknowledged and recognised by the acts or declarations of the trustee. The transfer by Nicholson to Tate, on the 3d of June 1795, carried with it the entire ownership of the stock, leaving in Nicholson no apparent title legal or equitable. It was the evidence of a sale and not of a trust or confidence reposed in Tate or accepted by him. This has so remained for upwards of sixty years, without any assertion of a trust by Nicholson or his representatives, or a recognition of it by Tate or those coming after him. Now, when the flight of two-thirds of a century has carried two generations of men into the grave, it is sought to convert this apparent sale and transfer of title into a special trust in behalf of a party who was neither ignorant nor deceived, and who, from the very facts alleged, knew of it at its inception, was not led to lie by in false security, who never himself asserted the special commission to Dr. Tate, and upon whose estate administration was taken out forty years ago.

Clearly this is no technical continuing trust which equity will enforce regardless of lapse of time ; whether exclusive jurisdiction over it belonged to chancery, or whether a remedy existed at law, the claim is stale and offensive. The delay has been so great and the laches so gross that, whether the case be rested on the analogy of the Statute of Limitations, or upon the principles which govern the administration of equity in relation to remissness and negligence, a chancellor will not lay his grasp upon the fund.

In the nature of the transfer it imported in the very beginning an adverse not a fiduciary ownership, and it would reverse all the ordinary presumptions of title flowing from a great lapse of time, were we without other and stronger facts set forth in the petition to determine that a technical continuing trust now exists, such as we must enforce, without undertaking the labour of a special application to the case.

We think the principles contained in the following decisions abundantly enforce our conclusion : Strimpfler *v.* Roberts, 6 Harris 298–9 ; McBarron *v.* Glass, 6 Casey 133 ; Brock *v.* Savage, 7 Id. 410 ; Lyon *v.* Marclay, 1 Watts 271 ; Finney *v.* Cochran, 1 W. & S. 118 ; Zacharias *v.* Zacharias, 11 Harris 452 ; Downey *v.* Garard, 12 Id. 52.

Decree affirmed.