# HARTFORD–EMPIRE CO. v. GLENSHAW GLASS CO.

### Civil Action No. 1650.

District Court, W. D. Pennsylvania.

July 16, 1942.

712

Albert C. Hirsch and Hirsch, Shumaker & Bash, all of Pittsburgh, Pa., for plaintiffs.

Max Swiren, of Chicago, Ill., Wm. B. Jaspert, of Pittsburgh, Pa., and Herbert Portes, of Chicago, Ill., for defendants.

SCHOONMAKER, District Judge.

The complaint discloses that plaintiff is seeking to recover royalties alleged to be due plaintiff on a series of license-agreements covering feeders, which are devices used in the process of manufacturing glass —six known as "Howard Feeders," and four known as "Hartford Feeders."

By answer, defendant asserts, as a defense to plaintiff's claim for royalties under the six Howard licenses, an equitable rescission of these license-agreements. As a defense to the entire cause of action, the answer avers that all of the license-agreements sued upon are an inherent, essential, and integral part of unlawful monopolies, combinations, and conspiracies in restraint of trade in violation of Sections 1 and 2 of the Sherman Act 15 U.S.C.A. §§ 1, 2; that they are, therefore, in their entirety, illegal and void.

The counterclaim sets up two causes of action against the plaintiff in two counts. In the first count, defendant charges the license-agreements covering the six Howard Feeders, executed in 1923, and renewed and extended in 1932· and in 1938, were induced by fraud. And defendant invokes the equity power of the court to enforce a rescission of the 1923 transaction, the setting aside of the license-agreements with the renewals and extension thereof, the restoration of the royalties paid thereon, and the restoration to defendant of a royalty-free license for twelve Howard Feeders which defendant originally had from the Howard Company under an agreement dated January 10, 1920. In the second count, the defendant charges that plaintiff, the cross-defendants, and other co-conspirators formed and have continuously carried out and maintained monopolies, combinations, and conspiracies in restraint of trade and commerce in violation of Sections 1 and 2 of the Sherman Act. These two sections embrace: (1) Patents covering the manufacture of glass-making machinery; (2) the manufacture and licensing of glass-making machinery; and (3) the manufacture, distribution and sale of unpatented glass bottles and other glass containers. The defendant seeks recovery of treble damages for the injury to its business sustained thereby.

Defendant also asserts as a further defense to plaintiff's claim that the maintenance of this suit by plaintiff is contrary to public policy by reason of the conspiracy charged in counterclaim.

The plaintiff has by thirty separate motions moved to strike out specific paragraphs of defendant's answer and counterclaim on the ground: (1) That the answer does not state a legal defense to plaintiff's claim; and (2) the counterclaim does not state a legal cause of action against plaintiff.

■■ The first question which presents itself on these motions is whether or not a motion to strike is the proper way in which to raise the question of the sufficiency of the answer and counterclaim. Rule 12(f) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the court may, on motion or on its own initiative, order any redundant, immaterial, impertinent, or scandalous matter stricken from any pleading. We doubt whether the motions to strike in this case come within any of the categories mentioned in Rule 12(f), and think we might properly dismiss the plaintiff's motions on that ground alone. However, from the wording of the motions, it appears to us that, so far as concerns the complaint and answer, they are really motions for judgment on the pleadings, which is authorized by Rule 12(c). And so far as concerns the two counts of·the counterclaim, the motions are equivalent to motions to dismiss for failure to state claims upon which relief can be granted, the form of remedy authorized by Rule 12(b). We shall therefore consider them in that category.

The next point to consider is whether or not the defendant is barred by the Pennsylvania statutes of limitations from recovering the moneys it has already paid on the license-agreements, and is also barred by laches as to its right to rescind the contracts and recover the moneys paid on these license-agreements. The defendant asserts that laches and the statute of limitations are affirmative defenses under Rule 8(c) of the Rules of Civil Procedure and may not be raised by a motion to strike. While it is true that this rule provides: "In pleading to a preceding pleading, a party shall set forth affirmatively * * * laches, * * * statute of limitations * * *," Rule 9(f) provides: Rule 9(f). "Time and Place. For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter."

■ It thus appears to us that where the allegations of time and place are averred in a pleading, whether a claim is barred by the statutes of limitations or laches may be determined on a motion to dismiss. See our opinion Cramer v. Aluminum Cooking Utensil Co., ·D.C., 1 F.R.D. 741; A. G. Reeves Steel Co. v. Weiss, 6 Cir., 119 F.2d 472; Moore's Fed. Practice, 597; 3 Ohlinger's Fed.Practice, 147; 3 Federal Rules Service 671.

In connection with this phase of the case, the defendant avers in its answer and counterclaim that on January 10, 1920, The Howard Company, a corporation owning certain patents relating to Howard Feeders, entered into an agreement with the defendant, whereby the defendant was licensed to operate twelve Howard Feeders on a royalty-free basis.

The answer further discloses that on or about June 23, 1922, the Hartford-Fairmont Company, predecessor of the plain-

tiff, Beechnut Packing Company, The Howard Company and the stockholders of that company, entered into an agreement unknown to the defendant, whereby the plaintiff corporation was formed for the purpose of acquiring and holding title to various patents covering the manufacture of glassware; and by virtue of that agreement, acquired control over all of the patents of The Howard Company. The answer further states that thereafter, the plaintiff corporation, in order to induce the defendant to cancel and surrender its royalty-free Howard licenses, represented to the defendant that on November 18, 1922, The Howard Company was involved in a number of interference proceedings in the Patent Office with the Hartford-Fairmont Company and others; and that by reason thereof, a serious possibility existed that The Howard Company might lose its patent strength. In order to avoid that danger, The Howard Company executed the agreement of June 23, 1922, whereby the plaintiff acquired all control of the Howard patents and applications. At the same time the plaintiff represented to the defendant that at the time plaintiff acquired control of all the Howard patents and applications, the plaintiff and its predecessor, Hartford-Fairmont Company, possessed a powerful patent position which dominated that of The Howard Company in the field relating to gob-feeding machinery used in the production of glassware; and further that the use of the Howard Feeders by the defendant and other licensees of The Howard Company could be enjoined by the plaintiff or Hartford-Fairmont Company on the grounds that the Howard Feeders infringed the dominating patents other than the Howard patents and applications held, owned and controlled by plaintiff or the Hartford-Fairmont Company during that time.

The plaintiff further represented to defendant that the relinquishment and cancellation by defendant of its royalty-free Howard licenses would give the defendant protection of great value which would permit it to continue its business and prevent long, expensive, harassing, and ultimately unsuccessful litigation, which the plaintiff threatened to institute unless the defendant would consent to cancel and surrender its royalty-free Howard licenses and execute and accept royalty-paying licenses from the plaintiff.

The defendant avers that all these statements were false and fraudulent in the fol-

lowing particulars: (1) The Howard Company was not involved in any interference in the Patent Office with the Hartford-Fairmont Company, nor was there any serious possibility or probability that it would be so involved; (2) neither the plaintiff nor the Hartford-Fairmont Company held a powerful or dominating patent position in the field relating to gob-feeding machinery used in the production of glassware; (3) neither the Hartford-Fairmont Company nor plaintiff could have enjoined the use by defendant of the Howard Feeders on the ground they infringed any patents held, owned or controlled by Hartford-Fairmont Company or the plaintiff; and (4) the relinquishment and cancellation by defendant of its royalty-free Howard license, and its acceptance of a license granted by plaintiff could not, and did not, give defendant any protection of any value in excess of that which defendant held as licensee of The Howard Company.

The answer discloses that defendant, relying upon the aforesaid false statements and representations, and believing them to be true, did, in March, 1923, cancel its royalty-free Howard license, surrendering and relinquishing the same to plaintiff. Simultaneously defendant executed with plaintiff six license agreements covering precisely the same Howard Feeders which the defendant had theretofore purchased from The Howard Company and which had been operated by the defendant under its royalty-free Howard license. Under the terms of its new Howard licenses, the defendant was required to pay exorbitant, unreasonable and oppressive royalties for the use of the Howard Feeders, being restricted and limited with respect to the type of glassware it could manufacture; the use which might be made of the defendant's products; the character of the glassware with respect to its weight, color, capacity, and composition; the quantity of any particular class of glassware which it might desire to produce; and the customers or class of customers to whom the defendant might desire to sell its products.

The answer sets forth further that all of these false and fraudulent representations were repeated again in 1931 and 1932, and were relied upon by defendant when the renewal license-agreements in suit were executed.

Further the answer avers that the means of acquiring knowledge of the falsity of said statements did not come to the de-

fendant until sometime after June 1, 1941, which was after the United States of America filed Civil Action No. 4426 in the District Court of the United States for the Northern District of Ohio, Western Division, entitled United States v. Hartford-Empire Co. et al., 1 F.R.D. 424, wherein the United States is seeking to restrain the Hartford-Empire Company from maintaining, and continuing to maintain, certain monopolies in restraint of trade among the several states of the United States.

Thereafter, the defendant commenced an investigation which ultimately disclosed the false statements made by the plaintiff to it, and within a reasonable time did cancel and rescind the license-agreement of March 27, 1923, and subsequent licenses executed by it covering Howard Feeders, dated December 1, 1932. In this connection, it will be noted that the licenses sued upon were dated December 1, 1932, and ran for six years. On December 1, 1938, they were renewed for a similar period of six years.

It further appears that the defendant has regularly and continuously made payment to the plaintiff of royalties to be due and payable under these license-agreements until November, 1940.

█ Assuming all of the allegations of the answer and counterclaim to be true, we cannot find that defendant's right to rescind the license-agreements and to recover the royalties sued, is barred by the statute of limitations. Nor can we find that laches has barred the right of defendant to rescind these license-agreements, in view of the allegations in the answer and counterclaim that defendant did not learn of these false representations until 1941. The question is one to be decided by the applicable law of Pennsylvania. See Equitable Life Insurance Co. v. Halsey, Stuart & Company, 312 U.S. 410, 668, 61 S. Ct. 623, 85 L.Ed. 920.

█ We find the law to be in Pennsylvania that the right to equitable rescission of a contract is not limited by the statute of limitations. Laches may be invoked only when the party asserting that right has failed to act within a reasonable time after discovery of the fraud, and the other party has suffered injury by that delay. See Fidelity-Philadelphia Trust Co. v. Simpson, 293 Pa. 577, 143 A. 202; McGrann v. Allen et al., 291 Pa. 574, 140 A.

552; Dalzell v. Lewis, 252 Pa. 283, 97 A. 407.

In Fidelity-Philadelphia Trust Co. v. Simpson, supra, the Supreme Court of Pennsylvania refused to invoke the doctrine of laches, although the fraud upon which the complaint was grounded occurred twenty-three years before the suit was instituted.

The plaintiff urges that the defendant should be adjudged guilty of laches, because it has pleaded no facts which would excuse its failure to discover till 1941, whether or not the alleged representations on which it relied were false. In other words, the plaintiff urges that a duty rested upon the defendant to investigate the truth of the representations made to it by the plaintiff. We cannot find any such duty resting upon the defendant.

█ The Supreme Court of Pennsylvania, in Emery v. Third National Bank of Pittsburgh, 308 Pa. 504, on page 513, 162 A. 281, on page 284, where a charge of misrepresentation of the value of certain assets was made, said: "But a bare suspicion or an opportunity to learn the truth through the exercise of reasonable diligence does not constitute knowledge of fraud sufficient to prevent recovery." This statement of the law was reaffirmed in a second hearing of this case at 314 Pa. 544, 171 A. 881. We therefore conclude defendant is not barred from setting up the fraud alleged in the answer and counterclaim, either by the Pennsylvania statute of limitation or, by laches.

█ Next, the plaintiff insists that the false representations alleged are not sufficient on their face to constitute such a fraud as would vitiate the contract sued upon. With this we cannot agree. It is our opinion that the allegations of fraud in the answer and counterclaim hereinbefore summarized, on page 714, are sufficient, if proved, to vitiate the license-agreement sued upon.

█ The point next made by the plaintiff is that the title to the six Howard Feeders is in it, and not in the defendant; and that it would be an idle gesture to rescind the contracts sued upon, when the court could not restore title to these six Howard Feeders to defendant by reason of an adjudication by this court in the suit of Hartford-Empire Company v. Glenshaw Glass Company, 47 F.Supp. 710, wherein title to these feeders was adjudged

to be in the plaintiff. In our opinion, this defense cannot be raised by a motion to strike or dismiss, but must be raised by direct pleading. True it is that paragraph 158 of defendant's counterclaim II (The Anti-Trust claim) avers that plaintiff instituted a suit against defendant, and that as a result of that litigation defendant was forced and compelled to execute the new license-agreement with plaintiff on December 1, 1932, covering the Howard Feeders; and that paragraph 161 of defendant's counterclaim II further avers that when the final decree was entered in favor of plaintiff against defendant in the suit described in paragraph 158 of Counterclaim II, defendant was prevented and restrained from using its Howard Feeders for the manufacture of fruit jars. However, that does not amount to the raising of the issue of res adjudicata, which is an affirmative defense under Rule 8(c), and therefore cannot be raised by a motion to strike or dismiss. If the plaintiff desires to raise that question, it must do so by reply to defendant's answer and counterclaim.

■ The plaintiff contends that the license-agreements sued upon are entirely legal and valid, and that therefore there is no merit in defendant's averment that this court should refuse to lend its aid to the enforcement of a bargain which is either inherently illegal, or the performance of which involves violation of the anti-trust statutes. As this case must come to trial on the issue of whether or not plaintiff was involved in an illegal combination in restraint of trade, we prefer to delay until the final hearing the determination of the question of whether or not the contracts sued upon by plaintiff were a part of that combination, or only collateral thereto and therefore enforceable in spite of such illegal combination.

■ We now turn to the sufficiency of the allegations of the Counterclaim II, which charges the plaintiff and the cross-defendants with a violation of Sections 1 and 2 of the Sherman Act, by conspiring to monopolize and restrain trade and commerce in the glassware industry. The sufficiency of this charge is not attacked by plaintiff. It urges that defendant's allegations of injury show that no damage resulted proximately from any breach by plaintiff of the anti-trust laws. With this contention we cannot agree. Paragraphs 57, 150 to 170 of the answer and counterclaim aver that defendant has been prevented and restrained from carrrying on, promoting and extending its lawful business; that as a direct and proximate consequence of the unlawful activities of the plaintiff, it has been directly injured in its property and business, as it has been required to pay exorbitant and oppressive royalties to plaintiff; and that it has been unlawfully prevented and restrained from undertaking or continuing the manufacture and sale of various lines of glassware, including fruit jars, milk bottles, prescription and proprietary-medicine bottles, and other glasswares which would have resulted in substantial profit to defendant. We held similar allegations to be sufficient in an anti-trust case: Stewart-Warner Corporation v. Staley, D.C., 42 F.Supp. 140. See also opinion of Judge Gibson of this District, in United Exhibitors v. Twentieth Century Fox Film D. Corporation, 31 F. Supp. 316.

■ The Supreme Court also has held that general allegations that a conspiracy in restraint of trade directly injured the business and property of the complaining party, are sufficient. See Stevens Co. v. Foster & Kleiser Co., 311 U.S. 255, 261, 61 S.Ct. 210, 85 L.Ed. 173.

We therefore conclude that the counterclaim on its face shows a good cause of action against the plaintiff.

■ Plaintiff urges that if there was a monopoly in restraint of trade in this case, the defendant was in pari delicto thereto, and cannot recover either damages under the anti-trust laws, or rents and royalties heretofore paid under the license-agreements. We cannot see the defendant in that category. Under the facts pleaded in the answer and counterclaim, the defendant was a victim, rather than a participant in the alleged conspiracy. The case of Eastman Kodak Company v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed 684, supports this view.

■ Plaintiff contends that a claim for damages under the Clayton Act, 38 Stat. 730, cannot be asserted in a counterclaim under Rule 13(b) of the Rules of Civil Procedure. We are unable to agree with this contention, and have heretofore held that it may be so asserted. See our opinion, Stewart-Warner Corporation v. Universal Lubricating Systems, D.C., 29 F.Supp. 846.

We therefore conclude that plaintiff's motions to strike the answer and counterclaim should be denied. The plaintiff will

be allowed twenty days from the date of signing the order denying its motion to strike, to reply to defendant's answer and counterclaim.

Plaintiff has asked that if motion 9 as to paragraphs 2(a), 14 and 15 of the answer, and paragraphs 27 and 32 inclusive of the counterclaim, and paragraphs 150 to 170 inclusive of the counterclaim; and motions 26 and 29 with respect to paragraphs 150 to 170 inclusive of the counterclaim, be denied, the defendant be required, either by amended pleading or by bill of particulars, more particularly to specify the charges therein named. On due consideration of these paragraphs, we are of the opinion that they are sufficiently specific; and plaintiff's motion for a more specific statement thereof will be denied.

An order in accordance with this opinion may be submitted on notice to opposing counsel.